IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARK PEREZ,

    Plaintiff,                                CIV. S. 04-2620 GGH

    vs.

JO ANNE B. BARNHART,                ORDER
Commissioner of Social Security,

    Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] For the reasons that follow, plaintiff's Motion for Summary Judgment or Remand is denied, and the Commissioner's Motion for Summary Judgment is granted. The Clerk is directed to enter judgment for the Commissioner.

BACKGROUND

        Plaintiff, born February 2, 1959, applied for disability benefits on August 26, 2002. (Tr. at 212, 40-42.) Plaintiff alleged he was unable to work since March 15, 1992, due to

---

[1] The case is before the undersigned pursuant to 28 U.S.C. § 636(c) (consent to proceed before a magistrate judge).

1

right ankle pain from a car accident in 1990 or 1991, left ankle pain, bilateral carpal tunnel syndrome, arthritis and depression. (Tr. at 50.)

In a decision dated July 28, 2004, ALJ L. Kalei Fong determined that plaintiff was not disabled.[2] The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since August 26, 2002.
>
> 2. The medical evidence establishes that the claimant has severe right ankle pain, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, subpart P, Regulations No. 4.
>
> 3. The claimant's testimony is not substantially credible for the reasons stated in the body of this decision.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4. The claimant has the residual functional capacity to perform the physical exertion requirements of work except for frequently lifting more than 10 pounds, occasionally lifting more than 20 pounds, and standing or walking for more than 2 hours total.  There are no non-exertional limitations (20 CFR § 416.945).

5. The claimant has never worked and therefore does not have any past relevant work experience that he could perform.

6. The claimant's residual functional capacity for the full range of light work is reduced by walking or standing limitations.

7. The claimant is 45-years-old, which is defined as a younger aged individual (20 CFR § 416.963).

8. The claimant possesses a limited 10th grade education (20 CFR § 416.964).

9. The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work activities of other work (20 CFR § 416.968).

10. If the claimant had the capacity to perform the full range of light, [sic] section 416.969 of Regulations No. 16 and rule 202.17 Table No. 2 of Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion that the claimant is not disabled.  If the claimant were limited to no more than the full range of sedentary work, Rule 202.18, Table No. 1, would direct a conclusion of disabled.

11. The claimant's capacity for light work has not been significantly compromised by his exertional limitations.  Accordingly, using the above-cited rules as a framework for decision-making, the claimant is not disabled.

12. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(f)).

(Tr. at 18-19.)

ISSUES PRESENTED

Plaintiff has raised the following issues:  A.  Whether the ALJ Improperly Discredited Plaintiff's Subjective Complaints; B.  Whether the Appeals Council Failed to Properly Consider Additional Evidence of Plaintiff's Impairments; and C.  Whether the ALJ

3

Erred in Failing to Utilize a Vocational Expert Regarding Plaintiff's Non-exertional Impairments.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

A. Whether the ALJ Properly Assessed Plaintiff's Credibility

Plaintiff asserts that the ALJ rejected his credibility without legally sufficient basis.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

\\\\\

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc). The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. Id. at 345-46. If the record contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities.[3] Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990). Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be clear and convincing. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

In this case, the ALJ found that plaintiff's complaints of right ankle pain were not proportional to the objective medical evidence and other non-medical factors. (Tr. at 16.) The ALJ stated:

---

[3] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

> In this regard, the record shows that while the claimant sustained a right ankle fracture in a motor vehicle accident approximately 22 to 23 years ago, this condition responded well to open reduction internal fixation and fusion surgery, has required very little follow up medical care over the years, has been managed well with over-the-counter medications, has not required further surgery or hospitalization, has not resulted in prescribed use of assistive devices for ambulation, and has not unduly interfered with his ability to move about and live a fairly independent lifestyle.

(Tr. at 16.)

The ALJ then summarized the medical reports which supported her finding that plaintiff's right ankle impairment was not as severe as alleged. The ALJ also discussed plaintiff's activities, lack of prescription pain medication or prescribed assistive devices for ambulation, and minimal post-operative medical treatment. Finally, the ALJ dismissed a letter from plaintiff's treating physician, Dr. Stansell, finding it not credible for six stated reasons. (Tr. at 17.) This letter, dated April 30, 2004, was written in support of plaintiff's claim, and opined that plaintiff was disabled and could not work. (Tr. at 201.) The ALJ spent much discussion in rejecting this opinion based on lack of treatment records and objective clinical findings to support it, as well as lack of recent treatment, failure to prescribe pain medications, that it was a significant departure from plaintiff's wide ranging daily activities, and was inconsistent with Dr. McIntire and the state agency physicians. (Id. at 17.)

A look at the record upon which the ALJ relied in summarizing her credibility findings indicates that indeed Dr. McIntire, a consulting neurologist, stated that although plaintiff had advanced post-traumatic degenerative osteoarthritis in his right ankle with resulting limp, bony deformity, and severe loss of range of motion, plaintiff could sit, stand or walk for up to two hours total or one hour before a change in position was needed. (Tr. at 177-78.) There was no limit on sitting. Plaintiff was limited to lifting and carrying a maximum of twenty pounds. (Id. at 178.) He was precluded from working on ladders or scaffolding, and would have some difficulty operating foot controls. (Id.)

\\\\\

The ALJ also cited to two state agency physicians' opinions which impliedly agreed that plaintiff's right ankle pain was not as severe as alleged by virtue of their residual functional capacity assessments. On October 31, 2002, the DDS physician found that plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for up to two hours in an eight hour day, and sit for six hours. (Tr. at 194.) Pushing and/or pulling in the lower extremities was limited due to the right ankle injury, restricting plaintiff to sedentary work. (Id.) Plaintiff could occasionally climb, balance, crouch, and crawl, and could frequently stoop and kneel. (Id. at 195.)

The other state agency assessment, conducted on August 11, 2003, for the most part assigned the same functional restrictions. (Tr. at 163.) The only distinction in this report was that plaintiff could never climb ladders or scaffolding, but could frequently climb ramps and stairs, and could frequently balance, stoop, kneel, crouch and crawl. (Id. at 164.)

On January 2, 2003, an x-ray of the right ankle indicated a plate and screw fixation device that was broken at mid point. (Tr. at 204.) There was irregularity at the fibula and tibia at the location of the nine year old fracture. Due to multiple lines at the site of the fracture, it was not possible to determine whether there were residual fracture lines or just irregular margins of the bony response. There was narrowing of the tibiotalar joint space. All of the abnormality appeared to be old, dating from the original fracture, with subsequent arthritic changes. (Id.)

Plaintiff conceded in his daily activities questionnaire that he is quite active. (Tr. at 73.) He lives with both elderly parents who are in poor health, and therefore helps around the house for three hours a day. He spends two hours a day looking for a job. He also performs odd jobs around the neighborhood. (Id.) Plaintiff cooks simple meals once a day, and does grocery shopping once a month which requires him to walk two blocks and carry $135 worth of groceries home. (Id. at 74.) Household chores include picking up trash and taking it out, watering a small garden, sweeping the porch, ironing, and cleaning. He has trouble completing these chores if he

stands too long. Other activities include walking to the park and relaxing his foot, while watching others and spending time with his kids. (Id.) Plaintiff leaves the house two or three times a day to go to the store, park, visit friends and family, and go downtown. (Id. at 75.) He cannot walk for long distances because of his ankle. He also goes to church and promotional activities with friends who get tickets. (Id. at 76.) At the hearing, plaintiff inconsistently testified that his mother shops for groceries, his friend takes out the garbage, and plaintiff himself does no yard work. (Id. at 221.)

Plaintiff also stated in this questionnaire that he takes no medications (Id. at 77.) At the hearing, plaintiff testified that he takes Motrin, aspirin, Tylenol and codeine, which is inconsistent with his prior statement but which nonetheless indicates that his pain is not as severe as alleged. (Id. at 220.)

Plaintiff also testified that Dr. Stansell gave him a back brace which helps with the pain. (Tr. at 222.) Although plaintiff walks with a cane, there is no evidence that one was prescribed for him in the scant medical records provided which consist of only twenty pages. (Tr. at 16, 138-58.) This scarcity of treatment records indicates that plaintiff's problems are not as severe as he makes them out to be, indicating a low level of care, and no follow-up surgery or other treatment. In fact, many of Dr. Stansell's twenty pages of treatment records are focused on problems other than what plaintiff alleges as a basis for disability. See Tr. at 138, 154, 155 (blood tests); 139 (obesity, cholesterol and hypertension); 142, 150, and 147 (hyperlipidemia and hypothyroidism); 157 (skin itch).

Plaintiff's inconsistencies also extend to his testimony at hearing that he has not driven a car since the 1992 car accident; however, he reported to the treating practitioner on September 6, 2000, that he was able to get his driver's license back. (Tr. at 223-24, 157.) In addition to demonstrating plaintiff's lack of credibility, this last inconsistency indicates that plaintiff could operate right foot controls in a car.

Substantial evidence supports the ALJ's credibility finding.

B.  Additional Evidence Submitted to Appeals Council

Plaintiff first alleges that the Appeals Council should have granted review to consider the new evidence submitted by Dr. Stansell.  The Appeals Council denied plaintiff's request for review on September 23, 2004.  (Tr. at 6.)

Because the question on judicial review is whether the <u>final</u> decision of the Commissioner is supported by substantial evidence, the status of new evidence in a case such as this one is curious.  42 U.S.C. § 405(g).  When the Appeals Council denies review, *the decision of the ALJ is the <u>final</u> decision*.  <u>See</u> <u>O'Dell v. Shalala</u>, 44 F.3d 855, 858 (10th Cir. 1994); <u>Keeton v. Dep't of Health and Human Services</u>, 21 F.3d 1064, 1066 (11th Cir. 1994); <u>Browning v. Sullivan</u>, 958 F.2d 817, 822 (8th Cir. 1992); <u>Russell v. Brown</u>, 856 F.2d 81, 83-84 (9th Cir. 1988); 20 C.F.R. §§ 404.955; 404.967 <u>et</u> <u>seq</u>.; 416.1455; 416.1467 <u>et</u> <u>seq</u>.; <u>cf.</u> <u>Falge v. Apfel</u>, 150 F.3d 1320, 1323 (11th Cir. 1998) (stating the District Court nevertheless may review the Appeals Council's denial of review if based on Appeals Council's determination that new evidence was not "new" and "material."); <u>accord</u> <u>Eads v. Secretary of Dep't of Health and Human Servs.</u>, 983 F.2d 815, 817 (7th Cir. 1993).[4]

Because the Commissioner does not contest whether the evidence submitted to the Appeals Council should be considered by this court, based on <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1452 (9th Cir. 1993), this new evidence will become part of the record on review, even though that evidence was never before the ALJ.  "We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review."  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1180 (9th Cir.2000).

The additional evidence submitted to the Appeals Council is a letter by plaintiff's treating physician which repeats much of his opinion from his earlier April 30, 2004 letter,

---

[4] Only if the Appeals Council <u>grants</u> review, and then issues a decision on the merits does the Appeals Council's decision become the final decision of the Commissioner.  <u>Russell</u>, 856 F.2d at 83-84; <u>Browning</u>, 958 F.2d at 822.

including chronic pain in the lumbar spine which radiates to his lower extremity, that strong analgesics only partially control the pain, that an old fracture of the right ankle contributes to the pain, all of which render him unable to work. (Id. at 207-08.) The only significant addition from the previous letter is Dr. Stansell's statement that x-rays indicate degenerative changes of the lumbar spine. (Tr. at 207.) Curiously, the record of the x-ray has not been submitted. Nor has Dr. Stansell submitted any objective evidence in support of these statements, and his treating records in no way support the opinions stated. Even if such an x-ray could be considered, degenerative changes alone are not a reason to remand for further development. This letter does not change the result in this case. The ALJ's reasoning for rejecting Dr. Stansell's earlier letter applies equally to this letter which adds no probative value to the record.

C. Whether the ALJ Should Have Used the Testimony of a Vocational Expert in Determining Plaintiff's Residual Functional Capacity

Plaintiff contends that the ALJ should have utilized a vocational expert because although he relied on Dr. McIntire's opinion, he did not rely on his limitation of no right foot controls which is a non-exertional limitation requiring testimony of specific jobs which could be done with this limitation.

The Guidelines in table form ("grids") are combinations of residual functional capacity, age, education, and work experience. At the fifth step of the sequential analysis, the grids determine if other work is available. See generally Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

The grids may be used if a claimant has both exertional and nonexertional limitations, so long as the nonexertional limitations do not significantly impact the exertional capabilities.[5] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds,

---

[5] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary; Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989). Non-exertional activities include

Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc). The ALJ, however, is not automatically required to deviate from the grids whenever plaintiff has alleged a nonexertional limitation. Desrosiers, 846 F.2d at 577 ("[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1996). The ALJ must weigh the evidence with respect to work experience, education, and psychological and physical impairments to determine whether a nonexertional limitation significantly limits plaintiff's ability to work in a certain category. Desrosiers 846 F.2d at 578 (Pregerson, J., concurring). "A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable." Desrosiers, 846 F.2d at 577-78. The ALJ is then required to use a vocational expert. Aukland v. Massanari, 257 F. 3d. 1033 (9th Cir. 2001).

In this case, although the ALJ relied on the opinion of consultant Dr. McIntire, he did not rely on the part of the opinion which stated that plaintiff would have "some difficulty operating foot controls with the right foot." (Tr. at 178.) The ALJ did not discuss his omission of this limitation and therefore impliedly rejected it, but the Commissioner argues that based on the sparse treatment records and plaintiff's daily activities, including the ability to drive, the finding of no limitation in this regard was appropriate.

First, it was error to reject only a portion of Dr. McIntire's opinion without explanation. "An ALJ is not entitled to pick and choose through a physician's opinion." Sklenar v. Barnhart, 195 F.Supp.2d 696, 703 n.6 (W.D.Pa. 2002) (citations and quotation omitted). In accepting part of Dr. McIntire's opinion and disregarding without explanation another part, the ALJ violated the rule against selective acceptance of medical opinions. Furthermore, the state

---

mental, sensory, postural, manipulative and environmental matters which do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary; Cooper, 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993).

agency opinions, upon whom the ALJ also relied for her credibility finding, additionally restricted plaintiff from operating foot controls, reducing him to sedentary work. (Tr. at 194, 163.)

Nevertheless, the ALJ did find in the alternative that plaintiff could do sedentary work under Rule 201.18 of Table No. 1 and would not be disabled under this section of the grids.[6] (Tr. at 17.) Any error by the ALJ in ignoring a significant limitation by a doctor upon whom he relied is harmless, however, because plaintiff can do sedentary work which involves no operation of foot controls with the right foot. An error which has no effect on the ultimate decision is harmless. Curry v. Sullivan, 925 F.2d 1127, 1121 (9th Cir. 1990).

"Sedentary work" is defined by 20 C.F.R. § 404.1567(a)(2005) as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. SSR 96-9p. Use of foot controls is not a requirement.

Because the evidence supports the ALJ's finding that plaintiff alternatively could do sedentary work which does not require use of foot controls, and because the guidelines permit a finding of not disabled, it was not necessary for the ALJ to call a vocational expert.

---

[6] Finding number 10 of the ALJ's decision incorrectly lists Rule 202.18 as applicable to sedentary work, and that it would direct a conclusion of disabled; however, that rule is in the light work category and involves skilled or semi-skilled previous work experience where skills are not transferrable, resulting in a finding of not disabled. Plaintiff did not have a prior work history or skills. (Tr. at 18.)

CONCLUSION

ACCORDINGLY, plaintiff's Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter Judgment for the Commissioner.

DATED: 1/13/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Perez2620.ss.wpd